Catron, Ch. J.
delivered the opinion of the court.
Thomas Bond, a citizen of Maryland, in the year 1800 made his last will, by which he liberated several of his slaves, and amongst other devises and bequests were the following:
1st. I give to my son, Phil Bond, a negro man, Bishop, to serve him five years after my death, and at the expiration of said five years the said Bishop to be a free man.
3d. I give to my son, Edward Bond, one negro boy named Jim, aged fourteen years, to serve him until he is twenty five years, of age, and then at the expiration of the time to be a free man.
3d. I give to my son, Thomas Bond, a negro boy named Frederick, aged twelve years, to serve him until twenty five years of age, and then at the expiration of that time to be a free man. One negro boy named Abelard, aged one year, to serve him until he is twenty five years of age, and then at the expiration of that time to be a free man.
4th. My will is that my negro woman named Dinah, shall have her freedom at my death; my negro woman Suck, to have her freedom at the expiration of three years after my death; my negro woman Rachel, shall have her freedom at the expiration of five years after my death; negro Betty, which I have given unto my daughter Elizabeth Gibson, shall have her freedom at the expiration of four years after my death.
And further, my mind and will is, that all the negroes *239 which I have hereinbefore given to my children, which are under the age of twenty five years, and also, all the young negroes which I may have in my possession at the time of my decease, shall have their freedom when they respectively arrive at the age of twenty five.
Thomas Bond died in Maryland, and the will was duly proved and authenticated. The clauses recited, emancipating the slaves of the testator, were made in accordance with the act of Maryland of 1796, ch. 67, sec. 13, by which it is provided, “That from and after the passage of this act, it shall and may be lav/ful for any person or persons, capable in law of making a valid will and testament,to grant freedom to, and effect the manumission of any slave or slaves belonging to such person or persons, by his, her or their last will and testament, and such manumission of any slave or slaves may be made to take effect at the death of the testator or testators, or at such Other periods as may be limited in such last will and testament.” The statute prohibits manumission to the prejudice of creditors, of slaves over forty five, and also of such as shall not be able to work and gain a sufficient maintenance and livelihood at the time the freedom given shall commence.
Clarissa, at the time of the testator’s death, was about tetl years of age, and claims her freedom by that clause of the will manumitting the young negroes. Before Clarissa was twenty five, she had three children, Hannah, Delia and Edward; after that age she had Edy and Martha. The mother and five children all sue jointly in this action.
The circuit court adjudged Clarissa free at twenty live, and that Martha and Edy, following the condition of the mother, were free, because born after she was free.
The court also adjudged, that the three children born before Clarissa was twenty five, followed the condition of the mother, and would be free at their respective ages of twenty five; neither of them at the time of the trial be- *240 mg that old. To this part of the charge, and finding of the jury thereon, error is assigned lor the plamtins mer-ror; and also for the defendants in error, Hannah, Delia and Edward, who claim to have been born free.
This cause has been argued with an anxiety for the defendants in error, and with an ability on both sides, leaving the court nothing to wish, save something of information of the course of adjudication in Maryland, if any has been had there on the subject. With the lights before us, however, we have come to a conclusion satisfactory to the majority of the court.
The statute of Maryland is open to remark in explanation of the will. Young slaves incapable of supporting themselves could not be emancipated, if the freedom given was to commence during such incapacity. When making the will the testator was governed by this restriction in reference to the slave children.
2. The statute does not give directly any powers to the testator to control the increase of the females who were slaves at his death; yet he having uncontrolled power of their freedom or slavery, it is perhaps the most consistent construction of the act to say, he had the power to declare the condition of Clarissa’s children born before the freedom given commenced. As to this middle state affecting the three children born before the mother was twenty five, the legislature has not declared its will: and in giving a construction to the will made pursuant to the statute, the court must bear in mind, the claim is one involving human liberty, and that the testator’s intention must be favorably interpreted to this end. 4 Am. Dig. 535: 1 Washington’s Reports, 239: 5 Am. Digest, title “Slaves:” Cook’s Justinian, 32, 13, 14. The increase must follow the condition of the mother. If when born she was a slave, they are slaves; if free, they are free.
She was not a slave for life; this is not insisted on: but that until she attained the age of twenty five, she was a slave. So the circuit judge thought, and instructed the *241 jury that the three children were slaves until the age of twenty five years, when they should be free. Of course, if this construction be the true one, we have in perpetuity, slaves for a term of years; the descendants'of Clarissa’s daughters must be in the same condition!
Let us run out the consequences of this construction. Suck was to have her freedom at the expiration of three years after the testator’s death; Rachel-, at the expiration of five years; Betty, at the expiration of two years.
At what ages these women were free does not appear. Suppose they had children before the time arrived? Should they be free at the same age the mother attained when she was free? This is in accordance to the decision of the circuit court: or shall they be free at the end of the mother’s term? Had she been a slave forever, their condition would have been the same. She being a slave for years their condition could not be worse. The child before born is part- of the mother, and its condition the same; the birth does not alter its rights. If the mother at the time of the birth be free, it is free. Justinian’s Institutes by Cooper, 13. In this respect, the rule governing slave property in this State, and the civil law, are alike. It is confidently believed that no such middle ground can be taken in this and similar cases. We find conflicting decisions on the subject. The case of Pleasants vs. Pleasants, (2 Call’s Reports, 320,) decided nothing to afford any aid. It only determined that the testator had the right to declare the condition of the children of his female slaves.
In the case of Maria vs. Surbaugh, (2 Randolph’s Rep. 228,) it is holden, that a female slave declared to be free at the age of thirty-one years, and having issue before she arrives at that age, the children are slaves for life. But we are told, the question, as to the civil state of the children born before the mother attained the age of thirty one, depends upon the true construction of the statute of 1753 of Virginia. Upon the policy of that *242 State, growing; out of, and evidenced by this and other statutes, is the decision mainly grounded. It is a most strict construction, not to say a strained one, in prejudice of human liberty, and is in conflict with the opinions of Chancellor Wythe and Judge Roane, in the cause of Pleasants vs. Pleasants, 2 Call, 338.
In the case of Ned vs. Beal, in Kentucky, (2 Bibb, 298,) the supreme court held, that a female slave devised to be free in the year 1804, who had children after the testator’s death, and before the year 1804, was, a slave until 1804, and that the children were slaves for life. With the reasons for this decision we are not satisfied. In New Jersey, where a will contained the following clause, “I leave my two negro girls to be sold by my executors for the term of fifteen years, and-at the end of that term to be free,” it was held that the negroes ceased to be slaves from the time of the sale, and therefore a child born of one of them during the term, was free. 1 Cox, 36: 4 Am. Dig. 534.
Something in accordance to the principles of this determination, it was decided in Virginia, (subsequent to the case of Maria vs. Surbaugh,) in Isaac vs. West’s executor, (6 Rand. 652,) that if the construction of a deed of emancipation be doubtful, resort may be had to the rule, that the deed is to be taken most strongly against the grantor, and liberally construed in favor of liberty, a rule growing out of the spirit of the laws of all civilized nations which favor liberty; that a deed of emancipation by which the master manumits his slaves at his death, but directs that they shall serve him as long as he lives, and at his death go free from all persons, passes a present right to freedom, reserving a right in the grantor to their personal services during his life, as a condition of the emancipation. Therefore, a child born of one of the emancipated females in the interval between the execution of the deed and the death of the grantor, is free from its birth.
*243 This adjudication proceeds upon the around of a vested right or freedom communicated to the lemale, and placing her on the foot of a person bound to service for a term of years, who has a general right to freedom, but there is an exception out of it by contract. So of the New Jersey decision.
Had Clarissa a vested right to freedom on the death of Thomas Bond? As to Suck, Rachel and Betty, and as to the man Bishop, devised for five years to Phil Bond, we think there can be no doubt they were intended by the testator to be free persons held, to service for a term of years: nor can we bring our minds to believe the testator meant differently, than if he had said, I will that my girl' Clarissa be free, but that she serve my children for the term of fifteen years; being then twenty five years of age, she will be able to support herself in compliance with the statute of 1796, and will have been raised to industry, and in moral habits by my children, so that she may the better enjoy her freedom. Furthermore, it is right she should pay for her raising, which, by the time she is twenty-five, she will have done. With this explanation, no one will .deny Clarissa would have taken by the will, a present right to freedom at the testator’s death, encumbered with a condition to serve fifteen years. In .reference to Rachel, Suck, Betty and Bishop, the testator was sufficiently explicit to. the above effect, and we think he manifestly meant the same thing when emancipating his young negroes. Suppose Suck twenty-two, he knew her age and he said she should serve until she was twenty five and then go free? How would this have differed from the words used; my woman, Suck, to have her freedom at the expiration of three years after my death? That Clarissa rested under most of the disabilities pertaining to a-state of slavery is true; but that she took a vested and undoubted right to freedom by Thos. Bond’s will is equally true.
The children bom of Clarissa in the State of Termes- *244 See, canie into existente impressed with the rights our laws confer. They were not the slaves for life of Wilham Harris. They could only be his slaves until the .termination of twenty-five years from the birth of their mother. Her state and condition fixed that of her increase, during the particular estate, and also after its termination. With us the remainder man takes the increase of slaves, born during the term. Timms vs. Potter, 1 Haywood, 234: 2 Yerger, 586. If the termer has no further title, and there be no one to take in remainder, slavery ceases of course. Such we take to be the condition of the three.children born of Clarissa before she was twenty-five.
But as it is insisted that the decisions in Maryland will be conclusive of this cause contrary to our present impressions, we will hold it up until the next term,, so that they may be had, or rather such of them as we have not seen and examined.
The cause was argued and the above opinion, prepared at the March term, 1833. The case was. again argued at this term, after which the' Chief Justice delivered the following opinion of the court.
This cause was, at the last term, holden up under’ advisement, to obtain and look into Maryland authorities. The cases of Hamilton vs. Craig, and Chew vs. Gary, have been produced to us, 6 Har. and Johnson’s Reports, 16 and 526. They established "the position, that if a negro woman slave be given to A, for his life, and at his death the slave to be free, the increase born of such woman during the life estate, are slaves for life, and the property of him to whom the use is limited. In Maryland, the issue is considered not an accessary, but as a part of the use, like that of other female animals. 1 Har. and M’Hen. 160 and 352: 1 Har. and John. 526: 1 Hayw. Rep. 335. Suppose a brood mare be hired for five years, the foals belong to him who hires, as a *245 part of the use of the dam. 2 Bl. Com. 290. 1 Hayw. 335. The slave in Maryland, in this respect, is placed ón no higher or different ground. Had the defendant Harris continued in Maryland, and the three children born of Clarissa, before she attained twenty-five years of age, been born there, they would have been his property, just as much as the produce of the labor of Clarissa. But Hannah, Delia and Edward were born in Tennessee, and the defendant’s right to properly in them vested subject to our laws; by which, the first taker has the same interest to the increase he has to the mother. Timms vs. Potter, 1 Hayw. Rep. 234: 2 Yerg. 586: Cook, 113, 381. Had Clarissa been given to Harris by will .in Tén-nessee^until she arrivedtat the age of twenty-five, and then over in remainder, Harris would 'have been entitled to her services for the term, and to the services of her children for the term; but then the mother and also the children would have gone over to the remainder man. When the title of Harris to Clarissa ceased, his title, by outlaw, to the three children ceased. That he has no right to their services is manifest.
North Carolina adopted the rule of nature, pertaining to human creatures, in declaring that the condition of the mother should be that of the child. The latv does not separate the title: they go to the remainderman together; and if there be no remainder man to take the mother, the child goes with her. By Thomas Bond’s will, there is no one to take in remainder. His executors were the first takers, until the young slaves respectively attained twenty-five years of age, and then they were to go free. Harris, as distributee, took the title the executors had. As first taker, his title ended when Clarissa was twenty-five. The executors have no'title over, nor has anyone.
The title of the mother and children standing together, they may sue together for their freedom. 1 Washington’s Rep. 233, 239. There is nothing in the objection of misjoinder.
*246 As to Hannah, Deba and Edward, the judgment will be reversed, and the cause remanded tor another trial as to Clarissa and the other children, the judgment will be affirmed, and they go free.
Green, J. dissented.